UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUDREY MILES,

                Plaintiff,                         Civil Case No. 12-12674
                                                      Honorable Linda V. Parker

v.

OCWEN LOAN SERVICING, LLC,

                Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 18.)

### I.

This is a mortgage foreclosure case. Plaintiff Audrey F. Miles ("Plaintiff") commenced this action in Oakland County Circuit Court against Defendant Ocwen Loan Servicing, LLC ("Defendant") on May 21, 2012. (Pl.'s Compl., ECF No. 4 at 1.) Plaintiff brought the following four counts against Defendant: Conversion to Judicial Foreclosure and/ or to Enjoin Foreclosure (Count 1); Breach of Contract (Count 2); Violation of the Truth in Lending Act (Count 3); and Wrongful Foreclosure (Count 4). (*Id.* at 3–7.) Defendant filed notice of removal on June 19, 2012 and removed this case from state court pursuant to 28 U.S.C. §§ 1332 and 1441. (ECF No. 1.) Subsequently, Defendant filed its "motion for summary judgment" pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. (Def.'s

Mot., ECF No. 18 at 1.) In its response to Defendant's motion, Plaintiff withdrew Counts 1, 3, and 4 against Defendant, leaving only her breach of contract claim remaining. (Pl.'s Resp. Br., ECF No. 37-1 at 8.) ("As the real issue two years after the lawsuit has been filed is whether or not there is a contract and a breach by Ocwen, Plaintiff's focus is only on Count II of the Complaint arguing for Breach of Contract by Ocwen. The foreclosure issues have been resolved by the Oakland County Circuit Court that granted Plaintiff a Preliminary Injunction against any further foreclosure sale."). For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment, pursuant to Rule 56.

## II.

Defendant brings its "[m]otion for [s]ummary [j]udgment pursuant to Rule 12(b)(6)" and "pursuant to Rule 56…." (Def.'s Mot., ECF No. 18 at 11.) However, a motion for summary judgment cannot be brought pursuant to Rule 12(b)(6); only a motion to dismiss can be brought pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). Further, a 12(b)(6) motion must be made before an answer is filed, which has not occurred here. *Id.* A court could construe a motion to dismiss under 12(b)(6) filed after an answer as a motion for judgment on the pleadings under Rule 12(c), which may be filed after an answer. *Dunn-Mason v. JP Morgan Chase Bank Nat. Ass'n*, No. 11-CV-13419, 2013 WL 4084676, at *3 (E.D. Mich. Aug. 13, 2013); *Williams v. State Farm Ins. Co.*, 781 F.Supp.2d 519, 522 (E.D.Mich.2011)

(further citations omitted). The standard of review for a motion under Rule 12(c) is the same as for a motion under Rule 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). However, Defendant fails to articulate an argument that Plaintiff's breach of contract claim lacks requisite facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When explaining the summary judgment standard, Defendant states that Rule 12(b)(6) "authorizes a Court to dismiss a complaint if it fails to state a claim upon which relief can be granted." (Def.'s Mot., ECF No. 18 at 11, quotations omitted.) Defendant fails to further articulate or support dismissal under 12(b)(6) in the remainder of its motion. Therefore, having reviewed Defendant's motion, it is the Court's reading of the motion that Defendant is solely making a summary judgment argument. Thus, the Court finds it unnecessary to construe Defendant's motion as a Rule 12(c) motion. For this reason, the Court will treat Defendant's motion exclusively as one brought under Rule 56.

The entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "When assessing a request for a summary judgment, the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *Williams*, 781 F.Supp.2d. at 522 (internal quotations and citations omitted). In order for a dispute to be genuine, it must contain evidence upon which a jury could find in favor of the nonmoving

3

party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (further citations omitted). "Thus, the moving party has the initial obligation of identifying the portions of the record that demonstrate the absence of any genuine issue of a material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Id.* (citing *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991) (further citations omitted)). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial. *Id.* (internal quotations and citation omitted).

## III.

Plaintiff is a mortgagor in connection with a mortgage executed on the subject property – a residence – which is located at 2290 Addis Road, Holly, Oakland County, Michigan 48442. (Pl.'s Compl., ECF No. 4 at 1.) The mortgage was executed on November 10, 2006, in favor of Mortgage Electronic Registration Systems, Inc. (MERS). (Mortg., ECF No. 4 at. 12.) Plaintiff signed for the loan, but her son and daughter-in-law, Tim and Tamara Miles, live in the home. (Tamara Miles Aff., ECF No. 4 at 54.) Plaintiff defaulted on the terms of the mortgage beginning on January 1, 2010 for failure to make monthly payments. (Def.'s Resp.

4

to Pl.'s Interrog. No. 6, Ex. 1, ECF No. 37-2 at 4.) Plaintiff's mortgage was

subsequently assigned from MERS to Defendant on January 20, 2010.

(Assignment of Mortg., ECF No. 4 at. 30.) Thereafter, because of Plaintiff's

default, Defendant referred the matter to the law firm of Trott & Trott, P.C. for

statutory foreclosure on August 12, 2010. (Def.'s Mot., ECF No. 18 at 2.) Plaintiff

elected to participate in state mediation in an effort to resolve the matter and a

formal mediation meeting was held. (*Id.*) As a result of mediation, a decision was

made by Defendant to offer Plaintiff a proposed loan modification agreement. (*Id.*)

The proposed loan modification agreement (the "agreement" or "proposed

modification agreement") was mailed to Plaintiff on August 16, 2011. (Proposed

Modification Agreement, ECF No. 4 at 34.) The agreement stated that in order to

accept the modification of the loan, among other things, Plaintiff was to make an

initial down payment in the amount of $1,136.69 by October 1, 2011 and to make

subsequent payments in the amount of $1031.39 per month until the loan was paid

in full. (*Id.* at 36.) Plaintiff made (and Defendant accepted) payments in full from

October 2011 until January 2012, but Defendant did not accept Plaintiff's February

payment. (Cashier's Checks, ECF No. 4 at 41–50; Audrey F. Miles Aff., ECF No.

4 at 52.) The agreement also required Plaintiff to sign the bottom of the agreement,

and mail two (2) fully executed copies to Defendant. (Proposed Modification

Agreement, ECF No. 4 at 34.) Plaintiff asserts that she complied with the terms of

the agreement and that her daughter-in-law mailed and faxed the agreement to Defendant. (Pl.'s Resp. Br., ECF No. 37-1 at 2.)

Plaintiff called Defendant regarding the returned payment and was informed by its representative that Defendant was not in receipt of the signed modification agreement, and that Plaintiff would have to again apply for modification under the Home Affordable Modification Program (HAMP). (Pl.'s Compl., ECF No. 4 at 2.) Plaintiff applied for HAMP modification and sent the requested information. (*Id.*) Plaintiff received a letter dated May 4, 2012, stating she had been turned down for HAMP modification, because the residence at issue is not her primary home. (HAMP Letter, ECF No. 4 at 89.)

Defendant asserts that Plaintiff did not mail two signed copies of the agreement to Defendant, and that rather, Plaintiff only faxed a copy of the agreement to Defendant. (Def.'s Mot., ECF No. 18 at 16.) Defendant asserts that consequently, Plaintiff did not properly accept the proposed modification agreement and that for this reason Defendant sent a new foreclosure referral to Trott & Trott, P.C. on February 16, 2012. (*Id.* at 10.) Defendant further asserts that on March 14, 2012 a MCL 600.3205 mediation notice was sent to Plaintiff and that Plaintiff did not respond to participate in state mediation pursuant to the statute. (*Id.*) As a result, Defendant commenced with foreclosure. (*Id.*)

## IV.

Defendant concedes that the competing contentions between itself and Plaintiff, as to whether Plaintiff mailed two (2) signed copies of the agreement to Defendant, suggest that there might be a genuine issue of material fact for a fact finder to consider at trial. (*Id.* at 17.) However, Defendant asserts that Plaintiff cannot produce a copy of the proposed modification agreement with Defendant's signature, and that because Defendant is a financial institution, per the Michigan statute of frauds, Plaintiff cannot maintain this action. (*Id.*) Specifically, the statue requires that in order for an agreement to be an enforceable writing, it must be signed by a representative of the financial institution. (*Id.*) Plaintiff concedes that there must be a signature from the financial institution on any modification agreement to uphold the agreement pursuant to Michigan's statute of frauds, but that Defendant was not acting as a financial institution at the time of the January 1, 2010 default that prompted the loan modification agreement. (Pl.'s Resp. Br., ECF No 37-1 at 5.)

## V.

Essentially, Plaintiff is arguing that Defendant is not a financial institution as that term would be understood in a discussion of creditors and debt collectors under the Federal Debt Collectors Practicing Act (FDCPA), because at the time of the January 1, 2010 default, Defendant was a debt collector and not a financial

institution, given that the assignment of the mortgage to Defendant occurred

January 20, 2010 – nineteen (19) days after the January 1, 2010 default. (Pl.'s Resp.

Br., ECF No. 37-1 at 1–11; Def.'s Resp. to Pl.'s Interrog. No. 6, Ex. 1, ECF No.

37-2 at 4.) Defendant argues that Defendant's status as a debt collector at the time

of Plaintiff's default is irrelevant because Plaintiff can be both a financial

institution and a debt collector at the time it offered the proposed modification

agreement to Plaintiff.

Michigan's statute of frauds establishes that loan modifications are not

enforceable unless memorialized in a writing signed with an authorized signature

by the financial institution.

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution ... A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

*McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 833 (E.D. Mich. 2012) (citing

Mich. Comp. Laws § 566.132(2)(b)). Also, Michigan's statute of frauds provides:

> "financial institution" means a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, *a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act*, Act No. 173 of the Public Acts of 1987, being sections 445.1651 to 445.1683 of the Michigan Compiled Laws, or Act No. 125 of the Public Acts of 1981, being sections 493.51 to 493.81 of the Michigan Compiled Laws, or an affiliate or subsidiary thereof.

8

Mich. Comp. Laws § 566.132(3) (emphasis added).

Whether Defendant was a debt collector when Plaintiff defaulted is not controlling. At the time Defendant offered Plaintiff the proposed modification agreement, Defendant was licensed as a mortgage broker, lender and servicer under the mortgage brokers, lenders and servicers licensing act, Act No. 73 of the Public Acts of 1987, and was thus a "financial institution" as defined by Michigan's statute of frauds. (DIFS Mortg. Licensee/ Registrant, Ex. A, ECF No. 39-2 at 2.) As Defendant was a financial institution under Michigan's statute of frauds at the time Defendant offered the proposed loan modification agreement to Plaintiff, the agreement had to be signed by Defendant in order for it to be enforceable. Plaintiff is unable to provide the Court with a copy of the agreement signed by Defendant, thus her breach of contract claim is unenforceable under Michigan's statute of frauds.

Plaintiff lastly asserts that the agreement is enforceable because Plaintiff made monthly payments in compliance with the agreement from October 2011 to February 2012. (Pl.'s Compl., ECF No. 4 at 5; Pl.'s Resp. Br., ECF No. 37-1 at 11–13.) This argument fails because "part performance is not sufficient to remove a claim from the statute of frauds applicable to financial institutions." *Saad v. Wayne Cnty. Register of Deeds*, No. 11-15590, 2013 WL 3455628, at *6 (E.D.

Mich. July 9, 2013) (citing *FEI Co v. Republic Bank, SE*, No 268700, 2006 WL 2313612 *1 (Mich. Ct App, Aug 10, 2006)).

For the foregoing reasons, the Court concludes that Defendant has shown that there is no genuine dispute as to any material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion for summary judgment pursuant to Rule 56 is **GRANTED**.

**SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 18, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 18, 2014, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

10